UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

SHAQUE JOHNSON,                          )
                                         )
            Plaintiff,                   )
                                         )
v.                                       )        No. 3:22-CV-00136-TRM-DCP
                                         )
KNOX COUNTY SCHOOLS, *et al*.,           )
                                         )
            Defendants.                  )

## ORDER AND REPORT AND RECOMMENDATION

This case is before the undersigned pursuant to 28 U.S.C § 636(b) and the Rules of this

Court on Plaintiff's Applications to Proceed In Forma Pauperis with Supporting Documentation

("Applications") [Docs. 2 & 7][1] and the pro se Complaint [Doc. 1]. For the reasons more fully

explained below, the undersigned **GRANTS** Plaintiff's Applications [**Docs. 2 & 7**] and will allow

Plaintiff to file the Complaint [**Doc. 1**] without prepayment of costs. No process shall issue,

however, until the Chief District Judge has ruled upon this Report and Recommendation because

the undersigned **RECOMMENDS** that the Chief District Judge: (1) **DISMISS** Plaintiff's Title VI

as to all Defendants, (2) allow Plaintiff's Title IX claim to proceed against Knox County Schools,

and (3) **DISMISS** Plaintiff's Title IX claim as to all remaining Defendants.

## I.     FILING FEE

Plaintiff has filed Applications with the required detailing of his financial condition [Docs.

2 & 7]. The Applications demonstrate that Plaintiff has very little income and no assets. 28

U.S.C. § 1915 allows a litigant to commence a civil or criminal action in federal court without

---

[1]        Plaintiff filed his original Application [Doc. 2] on April 15, 2022, but the Court found that
it was deficient [Doc. 6]. Plaintiff filed an Amended Application [Doc. 7] on June 1, 2022.

paying the administrative costs of the lawsuit. *Denton v. Hernandez,* 504 U.S. 25 (1992). The Court's review of an *in forma pauperis* ("IFP") application is normally based solely on the affidavit of indigence. *See Gibson v. R.G. Smith Co.*, 915 F.2d 260, 262–63 (6th Cir. 1990) (observing that the "filing of a complaint is conditioned solely upon a person's demonstration of poverty in his affidavit and the question of frivolousness is taken up thereafter"). The threshold requirement which must be met in order to proceed IFP is that the plaintiff show, by affidavit, the inability to pay court fees and costs. 28 U.S.C. § 1915(a)(1). However, one need not be absolutely destitute to enjoy the benefit of proceeding IFP. *See Adkins v. E. I. DuPont de Nemours & Co., Inc.*, 335 U.S. 331, 342 (1948). An affidavit supporting a request for IFP status is sufficient if it states that the plaintiff cannot, because of poverty, afford to pay for the costs of litigation and still pay for the necessities of life. *Id.* at 339.

In the present case, the Court has considered Plaintiff's Applications and economic status in making the decision of whether to grant leave to proceed IFP, and it appears to the Court that Plaintiff's Applications set forth grounds for so proceeding. Accordingly, the Court **GRANTS** Plaintiff's Applications [**Docs. 2 & 7**] and **DIRECTS** the Clerk to file the Complaint in this case without prepayment of costs and fees. The Clerk **SHALL NOT**, however, issue process at this time.

## II. COMPLAINT SCREENING

### A. Governing Standard for IFP Screening

Under 28 U.S.C. § 1915(e)(2)(B), courts are responsible for screening all actions filed by plaintiffs seeking IFP status and dismissing any action or portion thereof which is frivolous or malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief against a defendant who is immune from such relief. *See McGore v. Wrigglesworth*, 114 F.3d 601, 608 (6th Cir. 1997), *overruled on other grounds by Jones v. Bock*, 549 U.S. 199 (2007) *and La*

2

*Fountain v. Harry*, 716 F.3d 944, 951 (6th Cir. 2013); *see also Johns v. Maxey*, No. 2:07-CV-238, 2008 WL 4442467, at *1 (E.D. Tenn. Sept. 25, 2008). Frivolous suits are those based on "an indisputably meritless legal theory," or on allegations of "infringement of a legal interest which clearly does not exist." *Neitzke v. Williams,* 490 U.S. 319, 327 (1989); *see also* 28 U.S.C. § 1915(e)(2)(B)(i).

When a plaintiff proceeds pro se, the court must liberally construe the pleadings and hold them "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus,* 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)). However, even pro se complaints must satisfy basic pleading requirements. *Wells v. Brown*, 891 F.2d 591, 594 (6th Cir. 1989). When considering whether a complaint states a claim, the standard required by § 1915(e)(2)(B)(ii) is the same standard required by Federal Rule of Civil Procedure 12(b)(6). *See Brand v. Motley*, 526 F.3d 921, 924 (6th Cir. 2008); *accord Thomas v Eby*, 481 F.3d 434, 437 (6th Cir. 2007) (citations omitted). In other words, a pro se complaint must set forth sufficient factual matter, accepted as true, to state claim to relief that is plausible on its face. *See Hill v. Lappin*, 630 F.3d 468, 471 (6th Cir. 2010) (holding that the dismissal standard articulated in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) and *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) governs dismissals under 28 U.S.C. § 1915(e)(2)(B)). The plausibility standard requires the plaintiff to "raise a right to relief above the speculative level on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id.* at 555. (citations omitted). The complaint must include more than "labels and conclusions" and "formulaic recitation[s] of the elements of a cause of action. . . ." *Id.* The role of the court is not to "conjure allegations on a litigant's behalf." *Martin v. Overton*, 391 F.3d 710, 714 (6th Cir. 2004) (internal quotation marks and citations omitted).

3

"[P]ro se litigants are not relieved of the duty to develop claims with an appropriate degree of specificity." *Kafele v. Lerner, Sampson, Rothfuss, L.P.A.,* 161 F. App'x 487, 491 (6th Cir. 2005). Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." However, it must contain more than mere "labels and conclusions, . . . a formulaic recitation of the elements," or "naked assertions . . . without further factual enhancement." *Twombly,* 550 U.S. at 555, 557 (citations omitted). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). A complaint that merely includes "'naked assertion[s]' devoid of 'further factual enhancement'" is insufficient. *Id.* (quoting *Twombly*, 555 U.S. at 557).

### B. Analysis of Complaint

Plaintiff alleges that he was sexually harassed by a Knox County School official on two occasions and that the named Defendants—including various individual and entities associated with Knox County Schools as well as local law enforcement agencies—violated Title VI Of The Civil Rights Act of 1964 ("Title VI") and Title IX of the Education Amendments of 1972 ("Title IX") by failing to adequately respond to his reports of the alleged harassment. The Complaint alleges that the two incidents of sexual harassment occurred in May of 2021, Plaintiff's senior year of high school.[1] The first occurred when Plaintiff was working at his laptop in the school library [*Id.* at 1]. Plaintiff alleges that as he leaned back in the chair, Rod Crockett ("Crockett"), the principal, approached him from behind, pushed his hands between Plaintiff's arms, and grabbed Plaintiff's chest [*Id.* 1 & 2]. Plaintiff pushed Crockett's hands off his chest, and Crockett giggled and asked, "Working hard or hardly working?" [*Id.*]. Although confused, Plaintiff replied that he

was working, and Crockett responded, "And you can get it done. Just keep working on it." [*Id.*]. Plaintiff states that shortly thereafter, he asked both librarians about "faculty not being able to be touching, and where Crockett touched [him]" [*Id.*].[2]

Later that same month, as Plaintiff was leaving school during dismissal, Crockett was waving to students when he approached Plaintiff to congratulate him [*Id.*]. Plaintiff alleges that Crockett placed both hands on Plaintiff's "pecs" and told him how proud he was of Plaintiff before giggling, walking away, and wishing Plaintiff good luck [*Id.*]. Plaintiff believes that Crockett was attempting to "flirt" or "groom" him given that Crockett is a gay man [*Id.* at 3]. Plaintiff's father reported this second incident to school officials in June 2021 [*Id.* at 4].

The Complaint avers that the school did not take any action following Plaintiff's report of each incident, and instead showed deliberate indifference [*Id.* at 3]. Plaintiff states that Knox County Schools, the School Board, superintendents, the security department, the school attorney, and the human resources investigator failed at Knox County Schools' mission statement [*Id.* at 4–5]. Plaintiff claims that following the June 2021 report, Plaintiff's father emailed various school administrators, and Plaintiff has attached those emails to his Complaint [*Id.* at 8–10]. Plaintiff also indicates that he filed a report with the Knoxville Police Department ("KPD") at some point in time, referencing Case # 21-1020699, and states KPD has not advised him of the status or conclusion of the compliant [*Id.* at 1]. Plaintiff believes that Defendants' failure to launch an objective investigation into these incidents is due to his race, age, and sexuality, and Defendants'

---

[1]     Plaintiff states that he is nineteen years old at the time of filing his Complaint [Doc. 3 p. 1].

[2]     Later in his Complaint, Plaintiff alleges that he "walked up to the counter in the library and told a teacher" [Doc. 1 p. 3].

5

disdain towards interracial families and, as such, violated Title VI and Title IX [*Id.* at 3]. Plaintiff seeks damages of $7,000,000 [*Id.* at 5].

For the reasons discussed below, the undersigned recommends the Chief District Judge dismiss Plaintiff's Title VI claim in its entirety because Plaintiff has failed to state a claim against any of the defendants. The undersigned further recommends the Chief District Judge allow Plaintiff's Title IX claim to proceed against Defendant Knox County Schools, but that the Title IX claim against all other Defendants be dismissed for failure to state a claim.

### 1. Title VI Claims

Plaintiff first raises claims under Title VI, which states, "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. In order to state a claim for damages under Title VI, a plaintiff must allege that an entity receiving federal assistance is engaging in racial discrimination. *See Brooks v. Sundquist*, 149 F. Supp. 2d 941, 950 (M.D. Tenn. 2000) ("To state a claim for damages under Title VI, a plaintiff must allege that (1) the entity involved is engaging in racial discrimination; and (2) the entity involved is receiving federal assistance." (citation omitted)).

### a. Program or Activity Receiving Federal Financial Assistance

Title VI applies only to "program[s] or activit[ies] receiving Federal financial assistance." *See* 42 U.S.C. § 2000d. "For the purposes of [section 200d], the term 'program or activity' and the term 'program' mean all of the operations of . . . a department . . . or other instrumentality of a State or of a local government" as well as "a local educational agency." *Id.* at § 2000d-4a. Under the plain language of § 2000d, both public educational entities, *see, e.g.*, *Brooks v. Skinner*, 139 F. Supp. 3d 869, 881 (S.D. Ohio 2015), as well as local law enforcement agencies that receive federal

financial assistance are subject to Title VI. Title VI does not, however, apply to individuals associated with these entities or agencies. Rather, Title VI claims can only be asserted against "the entity … receiving the financial assistance." *Foster v. Michigan,* 573 Fed. App'x 377, 389 (6th Cir. 2014) (citation omitted); *see also Gilbert v. Valley View Pub. Sch. Dist. No. 365–U,* No. 08 C 1254, 2008 WL 4866353, at *8 (N.D. Ill. June 23, 2008) ("Because Section 2000d prohibits discrimination by recipients of federal funding, [ ] individual defendants cannot be held liable for violations of Title VI."). Thus, an individual cannot be sued in their individual capacity under Title VI. *See Skinner*, 139 F. Supp. 3d at 881 ("In a Title VI case, the proper defendant "is an entity rather than an individual.").

In his Complaint, Plaintiff states he "want[s] to file a complaint in federal court against Knox County schools, Knox County School Board, Gary Dupler[, a Knox County Schools attorney,] and Knox County schools security department (Jason Periard and Paul Pinkston) and (Becky Weurich) human resource department)" [Doc. 1 p. 1]. He further states he wishes to file against "the Knox County Police department" and "Knoxville Police department" [*Id.*].

Plaintiff names both Knox County Schools and Knox County School Board as separate Defendants in his Complaint. Knox County Schools and Knox County School Board are not separate legal entities for purposes of filing suit, however, as Knox County Schools operate within the policies set by Knox County Board of Education. *See Estate of Olsen v. Fairfield City Sch. Dist. Bd. of Educ.*, 341 F. Supp. 3d 793, 799 (S.D. Ohio Sept. 21, 2018) (looking to state statutes to determine which school-related entities are subject to suit); Tenn. Code Ann. § 49-1-103 (2022) (defining "local board of education" as "the board of education that manages and controls the respective local public school system"); *see also McCoy v. Bd. of Educ., Columbus City Schs.*, No. 12-3040, 2013 WL 538953, at *2, n.2 (6th Cir. Feb. 13, 2013) (referring to school board of

education, school district, and current superintendent collectively as "the Board" despite being named as separate defendants). The undersigned therefore recommends the Chief District Judge dismiss the claims against Knox County School Board as duplicative of the claims against Knox County Schools ("KCS"). For similar reasons, the undersigned further recommends the Chief District Judge dismiss the claims against Knox County Schools Security Department and Knox County Schools Human Resources Department, because to the extent they exist, they are not separate legal entities subject to suit. *Cf. Nieves v. Kiekert AG*, No. 20-11467, 2020 WL 6335993, at *2 (E.D. Mich. Oct. 29, 2020) ("Because Kiekert Human Resources is not an entity with legal or corporate existence separate from that of Kiekert USA, and therefore cannot be subject to service of process, the Clerk's Entry of Default against Kiekert Human Resources is set aside.").

This leaves KCS as the only school-related entity subject to suit. In his Complaint, Plaintiff states, "Knox County schools receives Title IX funding" [Doc. 1 p. 1]. As discussed below, Title IX also only applies to certain entities receiving federal funding. Thus, while Plaintiff does not explicitly state KCS receives Title VI funding, the Court construes Plaintiff's Complaint—particularly since Plaintiff is proceeding pro se—as adequately pleading that KCS is a qualifying entity to which Title VI applies.

As to Plaintiff's Title VI claims against the individually named Defendants, including Gary Dupler, Jason Periard, Paul Pinkston and Becky Weurich, the claims against each of these Defendants must be dismissed. To the extent Plaintiff is suing these individuals in their individual capacity, such claims must be dismissed because Title VI only applies to entities, not individuals. *See Skinner*, 139 F. Supp. 3d at 881. Furthermore, to the extent Plaintiff is suing these individuals in their official capacity, such claims are duplicative of the claims against KCS. The undersigned

therefore recommends the Chief District Judge dismiss the Title VI claims against Gary Dupler, Jason Periard, Paul Pinkston, and Becky Weurich.

Finally, Plaintiff names "the Knox County Police department"[3] and "Knoxville Police department" in his Complaint. Title VI could apply to these local law enforcement agencies to the extent they constitute "department[s] . . . or other instrumentality of a State or of a local government." *See* 42 U.S.C. § 2000d-4a. However, Plaintiff fails to state in his Complaint that these agencies receive federal financial assistance—a statement he did make regarding KCS. Such an omission precludes Plaintiff's Title VI claim against these agencies from going forward. *See Douglas v. Kazlaukas*, No. 4:10-CV-140-M, 2011 WL 462971, at *3 (W.D. Ky. Feb. 2, 2011) ("Plaintiff's allegations also fail to state a claim because to maintain a private right of action under Title VI, Plaintiff must make a threshold showing that the entity in question receives federal financial assistance. Plaintiff does not allege, nor can it be liberally construed from the complaint, that the [Owensboro Police Department] receives federal financial assistance." (citation omitted)). The undersigned therefore recommends the Chief District Judge dismiss the Title VI claims against the Knox County Sheriff's Office and the Knoxville Police Department for failure to state a claim under Title VI.[4]

---

[3]     The Court presumes Plaintiff is referring to the Knox County Sheriff's Office, as is there is no Knox County Police Department, and the Knoxville Police Department.

[4]     To the extent the Chief District Judge finds Plaintiff has sufficiently pleaded that these law enforcement agencies receive federal financial assistance, the undersigned recommends the Chief District Judge nevertheless dismiss the Title VI claims against these agencies because Plaintiff has failed to provide even a conclusory statement as to how these agencies intentionally discriminated against him as a result of his race. Rather, he simply alleges that he filed a report with the Knoxville Police Department but did not hear anything back and that the Knox County Sheriff's Office has not updated Plaintiff with respect to the status or conclusion of his police report [Doc. 1 p. 1].

9

In sum, for the reasons set forth above, the undersigned recommends that the Chief District Judge dismiss Plaintiff's Title VI claims against all Defendants other than KCS, and as discussed below, the undersigned recommends that the Title VI claim against KCS be dismissed as well.

### b. Intentional Racial Discrimination

For an entity that receives federal financial assistance to be liable under Title VI, it must have subjected an individual to discrimination "on the ground of race, color, or national origin." Title VI does not address discrimination on the basis of age, sex or gender, and therefore does not provide a cause of action for such claims. *Foster*, 573 Fed. Appx. at 387–88 (looking to the plain language of Title VI, persuasive authority from sister circuits, and dicta from the Supreme Court to find Title VI does not apply to sex or gender discrimination); *Lee Testing & Engineering, Inc. v. Ohio Dep't of Transp.*, 855 F. Supp. 2d 722, 725 (S.D. Ohio Feb. 29, 2012) ("[B]y its plain terms, Title VI only bars discrimination on the basis of 'race, color, or national origin.' Thus, Plaintiffs do not state a valid claim for Title VI relief as to their claims for sex and age discrimination." (quoting 42 U.S.C. § 2000d)). Further, "Title VI targets intentional discrimination only." *Foster*, 573 F. App'x at 388 (citing *Alexander v. Sandoval*, 532 U.S. 275, 280 (2001)); *see also Thompson v. Ohio State Univ.*, 990 F. Supp. 2d 801, 816 (S.D. Ohio 2014) ("To state a Title VI claim against OSU, Plaintiff must plead intentional discrimination."); *Terzneh v. Fed. Nat'l Mortg. Ass'n*, No. 221CV02228TLPTMP, 2021 WL 4529707, at *4 (W.D. Tenn. Oct. 4, 2021) (stating plaintiff must allege intentional discrimination under § 2000d).

In asserting a claim of intentional discrimination under Title VI, a Plaintiff must plead more than mere conclusory allegations of race discrimination. "A complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Foster*, 573 Fed. Appx. 377 at 388 (quoting *Nali v.*

*Ekman*, 355 F. App'x 909, 913 (6th Cir. 2009)). It is also insufficient for Plaintiff to simply allege, without more, that they are a member of a suspect class. *See id.* at 388–89. Here, while Plaintiff alleges that KSO did not conduct a comprehensive investigation into his report of sexual harassment by Crockett and did not keep him properly informed on the process, his only hint of a race-discrimination claim are his statements that "Knox County schools did this to discriminate against me because of my age sexuality and because of my race and maybe a disdain towards interracial families," and that "KCS discriminated against me in many ways. Maybe as a black male I didn't deserve the respect and process of investigation or protection" [Doc. 1 pp. 3–4]. These conclusory statements fall short of stating a claim of intentional, racially motivated discrimination. At most, they are conclusory statements in which Plaintiff identifies himself as a member of a suspect class and then states he was discriminated against because of membership in that class. Such a "complaint that includes conclusory allegations of discriminatory intent without additional supporting details does not sufficiently show that the pleader is entitled to relief." *Foster* at 388 (quoting *Ekman*, 355 F. App'x. 909, 913). Moreover, to the extent Plaintiff alleges age, sex or gender-based Title VI claims, no such cause of action exists. Plaintiff's allegations against KCS therefore fail to state a claim under Title VI because he has not articulated any facts evidencing that actions or lack thereof by KCS were taken because of intentional race-based discrimination.

Accordingly, the Court **RECOMMENDS** that the Chief District Judge **DISMISS** Plaintiff's Title VI claim in its entirety against all Defendants.

### 2. Title IX Claims

Plaintiff's remaining claims arise from Title IX, which states, "No person in the United States shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial

11

assistance." 20 U.S.C. § 1681(a). The Act "unquestionably" imposes a "duty [on those educational programs or activities receiving Federal financial assistance] not to permit teacher-student harassment." *Wamer v. Univ. of Toledo*, 27 F.4th 461, 466 (6th Cir. 2022); *see also Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 290 (1998). The Act also imposes a duty on such programs and activities not to permit student-to-student, or peer, harassment. *See Kollaritsch v. Mich. State Univ. Bd. of Tr.*, 944 F.3d 613, 619–20 (6th Cir. 2019); *Davis v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 648 (1999).

Recently, the Sixth Circuit has distinguished the circumstances under which "a school that receives federal funds can be held liable in damages" for teacher-student sexual harassment versus for student-student sexual harassment. *See Wamer*, 27 F.4th at 467 ("*Davis* and *Kollaritsch* both addressed claims of peer harassment, rather than teacher-student harassment, and thus are not necessarily directly applicable, in all respects, to teacher-student harassment claims."). For a plaintiff to proceed with a claim of teacher-student harassment, they must allege, "(1) [the plaintiff] was sexually harassed by a teacher or professor, (2) an official with authority to take corrective action had actual notice of the harassment, (3) the school's response was clearly unreasonable, and (4) the school's deliberate indifference caused [the plaintiff] to suffer discrimination" in the form of either "an additional instance of harassment or [] an objectively reasonable fear of further harassment [that] caused [the plaintiff] to take specific reasonable actions to avoid harassment [and] which deprived the plaintiff of the educational opportunities available to other students." *See id.* at 471.

The standard for proving a school's liability for student-student harassment is more demanding. *See id.* at 470–71 ("alleging teacher-student harassment" is "a less stringent standard" than student-student harassment); *cf. Kollaritsch*, 944 F.3d at 619 ("student-on-student sexual

harassment is a 'high standard' that applies only 'in certain limited circumstances'" (citing *Davis*, 526 U.S. at 643)).  In such cases, the plaintiff must prove not only that they were subject to sexual harassment, but that the harassment was "severe, pervasive, and objectively offensive." *Compare Kollaritsch*, 944 F.3d at 619 (stating a school is liable for sexual harassment "that is [] severe, pervasive, and objectively offensive"), *with Wamer*, 27 F.4th at 468 (stating "[t]he district court correctly found" the "severe, pervasive, and objectively offensive" did not apply in the teacher-student context); *Huang v. Ohio State Univ.*, No. 2:19-cv-1975, 2022 WL 2954234, at *2 (S.D. Ohio July 26, 2022) (noting *Wamer* created "an intervening change in the controlling law surrounding deliberate indifference cases of teacher-student harassment").[5]  Furthermore, as it relates to the causation element, the plaintiff must show they were subject to an additional instance of harassment after the school received notice—it is not sufficient for the plaintiff to show an objectively reasonable fear of further harassment that caused them to be deprived of the educational opportunities available to other students.  *See Kollaritsch*, 944 F.3d at 620 ("The critical point here is that the *Davis* formulation requires that the school had actual knowledge of some actionable sexual harassment and that the school's deliberate indifference to it resulted in further actionable harassment of the student-victim.").  The Sixth Circuit's rationale for applying a less stringent standard in teacher-student harassment cases is that "[w]hen a teacher sexually harasses a student, it can more easily be presumed that the harassment would undermine and

---

[5]     The Sixth Circuit recently authored an opinion in *Snyder-Hill v. Ohio State University*, 48 F.4th 686, 704 (6th Cir. 2022), in which the Court stated the plaintiffs had to allege the "severe, pervasive, and objectively offensive" element for a physician-student claim.  Although at first blush this seems to contradict *Wamer*, the Court made its statements in the context of what the plaintiffs should have alleged back in 2018, when the Court had not yet distinguished between teacher-student and student-student claims.  Thus, it appears the Court was simply applying the standard as it was understood at that time, not as it is applied post-*Wamer*.

13

detract from the student's educational experience because teachers are at the core of a student's access to and experience of education." *Wamer*, 27 F.4th at 471 (citations omitted).

Here, Plaintiff alleges teacher-student harassment, meaning the less stringent teacher-student standard originally set forth in *Gebser* and recently refined in *Wamer* applies. For the reasons discussed below, Plaintiff has pleaded facts sufficient at this stage in the proceedings to meet each of the required elements for this standard.

### a. Sexual Harassment

A plaintiff alleging teacher-student misconduct must first allege they were "sexually harassed by a teacher or professor." *Id.* at 471; *see also Williams ex rel. Hart v. Paint Valley Local Sch. Dist.*, 400 F.3d 360, 366 (6th Cir. 2005) ("[Title IX's] duty not to discriminate on the basis of sex . . . encompasses . . . sexual harassment"). The Sixth Circuit has "conservatively describe[d] 'harassment,'" in the Title IX context "as some type of aggressive and antagonistic behavior that, from the victim's perspective, is uninvited, unwanted, and non-consensual." *Kollaritsch*, 944 F.3d at 620. However, it is not enough for the plaintiff to simply allege harassment, they must also show the harassment, or discrimination, was "on the basis of sex." In determining whether harassment was done "on the basis of [plaintiff's] sex," the Sixth Circuit has often turned to prior Title VII decisions since the two acts share identical language and "[t]he boundaries of 'on the basis of sex' have been more extensively analyzed under Title VII jurisprudence." *Tumminello v. Father Ryan High School*, 678 Fed. App'x 281, 284 (6th Cir. 2017). However, much of the case law discussing whether a perpetrator's conduct constitutes sexual harassment under Title VII and Title IX focuses on whether the sexual harassment was severe, pervasive, and objectively unreasonable—a standard that the Sixth Circuit recently clarified does not apply to teacher-student misconduct cases.

14

Even so, the Title VII and Title IX cases remain relevant to the extent some courts bifurcate the sexual harassment element into sub-elements of whether the perpetrator's actions constitute sexual harassment and whether such sexual harassment was severe, pervasive, and objectively unreasonable. In *Doe v. Hamilton County Board of Education*, for example, this Court "[f]irst . . . determined whether the alleged conduct [in that case] constitute[d] sexual harassment" and then considered whether "the harassment was 'so severe, pervasive, and objectively unreasonable' as to constitute a denial of educational opportunities." 329 F.Supp.3d 543, 557 (E.D. Tenn. Aug. 6, 2018). In discussing the first sub-element, the *Doe* court noted "it has long been settled law that same-sex sexual harassment is actionable under Title IX." *Id.* at 558 (citations omitted). Later on in the opinion, the Court further stated that because Title IX is concerned with discrimination "on the basis of sex" or "because of sex," the applicable question in determining whether an individual's conduct constitutes "sexual harassment" is whether the alleged perpetrator was "motivated by [the alleged victim's] gender." *Id.* at 560. Finally, the Court stated, "it is sensible to assume in the overwhelming majority of sexual assault cases, the victim's gender is a motivating factor for the attacker; this is indisputably the case when the attacker is driven by sexual desire." *Id.*

Construing Plaintiff's arguments liberally—particularly since he filed his Complaint pro se—there is a sufficient factual basis for finding Plaintiff has met the first *Wamer* element. Plaintiff alleges that he was leaning back in his chair in the library when Crockett crept up behind him, shoved his hands between Plaintiff's arms, and grabbed Plaintiff's chest [Doc. 1 p. 1]. At that point, Plaintiff alleges he pushed Crocket off with his elbows and shoulders and Crockett began to giggle and asked "Are you working hard? Or hardly working?" [*Id.*]. After Plaintiff responded, "I was working," Crockett purportedly stated, "And you can get it done. Just keep

15

working on it" [*Id.*]. Once Crockett left the area, Plaintiff alleges he "ask[ed] both librarians about faculty not being able to be touching, and where Crockett touched me" [*Id.*]. After detailing this incident in his Complaint, Plaintiff goes on to state, "I believe Mr. Crockett was trying to take advantage of me," and, "Mr. Crockett being homosexual made it feel like maybe he was trying to 'flirt' or 'groom' me" [*Id.* at 3].

Crockett's alleged conduct constitutes "harassment" in that it is "aggressive and antagonistic behavior that, from [Plaintiff's] perspective, is uninvited, unwanted, and non-consensual." Construing the facts in the light most favorable to Plaintiff, a reasonable jury could find an authority figure coming up from behind a student, inserting their hands underneath the student's arms, grabbing their chest, and then giggling as "aggressive and antagonistic" behavior. Further, the fact that Plaintiff viewed the conduct as unwanted is evinced by him pushing Crocket off with his elbows and shoulders and later discussing the incident with the library staff.

As for whether this conduct was "on the basis of [Plaintiff's] sex," Plaintiff asserts that Crockett is homosexual and that he may have been trying to flirt with, or groom, Plaintiff. This statement goes directly to Crockett's alleged motive in performing the "harassing" conduct, since flirting with or grooming someone shows a clear sexual desire for the subject individual. As stated by the Court in *Doe*, the victim's gender is "indisputably" a motivating factor for the attacker "when the attacker is driven by sexual desire." *Doe*, 329 F.Supp.3d at 560. Thus, Plaintiff has sufficiently pleaded both that Crockett's conduct was harassing, and that such harassing conduct was "on the basis of sex," thereby satisfying the first *Wamer* element at the pleading stage.

**b. Actual Notice**

The second element in a teacher-student sexual harassment claim looks to whether "an official with authority to take corrective action had actual notice of the harassment." *Wamer*, 27

16

F.4th at 471. The actual notice requirement has been described as "ultimately a matter of who knew what and when." *Doe*, 329 F.Supp.3d at 564; *see also Lipian v. Univ. of Mich.*, 453 F.Supp.3d 937, 957–60 (E.D. Mich. Apr. 9, 2020) (applying the who, what, when framework). In his Complaint, Plaintiff alleges two points in time when the school may have received notice of the alleged sexual harassment, including 1) right after the incident in the library occurred in May 2021, at which time Plaintiff alleges he told either a school librarian or teacher, and 2) in June 2021, when Plaintiff told his father, who then reached out to school officials. Of these two instances, only the first instance can possibly support Plaintiff's claim.[6] As it relates to this first instance of possible notice, Plaintiff states he "tried to get back to work [after the incident in the library occurred] but then got up to ask both librarians about faculty not being able to be touching, and where Crockett touched me" [Doc. 1 p. 1]. At a second point in the Complaint, Plaintiff goes on to state, "I walked up to the counter in the library and told a teacher that a person is [not] supposed to be touching a child like that. She said that no one is supposed to put a hand on their child. They now act like I never told them that." [*Id.* at 3]. By making these statements, Plaintiff has sufficiently alleged at this stage in the proceedings the "who," "what," and "when" necessary to meet the second *Wamer* element.

    i.   The "Who"

A school can only be said to have actual notice of an incident of sexual assault if an "appropriate person" is aware of the incident. *Gebser*, 524 U.S. at 290. An "appropriate person" has been described by the Supreme Court as "an official who at a minimum has authority to address

---

[6] The second instance cannot support Plaintiff's claim because both incidents of alleged sexual harassment had already occurred by that point and, as explained more fully below under the fourth *Wamer* factor, a school can only be liable for harm to a student that occurs after the school receives notice.

the alleged discrimination and to institute corrective measures on the recipient's behalf." *Id.* As for what individuals have the authority to address in terms of discrimination and institute corrective measures, neither the Supreme Court, the Sixth Circuit, nor other circuits have created a bright-line rule for whether other school employees such as teachers or librarians constitute "appropriate persons." *See Doe*, 329 F.Supp.3d at 564 ("Is the knowledge of a school administrator required? Or is a teacher's knowledge sufficient? Is the knowledge of a non-teaching staff member, such as a nurse, janitor, or cafeteria worker enough? The dissenters in *Davis* criticized the Court for not addressing this question."); *Id.* ("As to 'whether notice to a teacher constitutes actual knowledge on part of a school board,' the Eleventh Circuit has found it to be an 'open question.'" (quoting *Hawkins v. Sarasota Cty. Sch. Bd.*, 322 F.3d 1279, 1286 (11th Cir. 2003))).

Instead, whether such employees constitute "appropriate persons" appears to be a case-specific, fact-dependent, inquiry that depends on both the "unique and idiosyncratic" "hierarchies and disciplinary protocols" in place at each school, *see Lipian*, 453 F.Supp.3d at 957, as well as the employee's specific duties and responsibilities at the time they were informed about the alleged sexual assault. *See Doe*, 329 F.Supp.3d at 565 (accounting for the fact that the high school basketball coach and teacher's role at the time the incidents occurred "went beyond his regular duties" in determining he was an "appropriate person"). More recently, the Sixth Circuit elaborated on the "appropriate persons" standard in *Kesterson v. Kent State University*. There, the plaintiff had initially told several university employees she was raped and then only later was the incident eventually reported to the school's Title IX office. *Kesterson*, 967 F.3d at 523–24. The plaintiff argued Kent State had actual notice as soon as she told the first university employees, as those "employees could have pointed her to school resources, and they all had an obligation to report her allegations." *Id.* at 529. The Sixth Circuit disagreed, finding actual notice was not

imputed to Kent State until the Title IX coordinator was informed because, unlike the first employees to be informed, "[s]he had the authority to take corrective actions on Kent State's behalf to remedy the sexual discrimination [the plaintiff] faced" in that she was "someone 'high enough up the chain-of-command' that her decision constitutes the school's decision." *Id.* (quoting *Hill v. Cundiff*, 797 F.3d 948, 971 (11th Cir. 2015)).

As for the plaintiff's argument that the other employees should have imputed the university with actual notice because they were mandatory reporters, the Sixth Circuit stated that while the employees' failures to report the incident despite their mandatory reporting duties were "errors in judgment or violations of school policy," they were not "the actions of Kent State or failures to respond by Kent State." *Id.* The Court reasoned that, "Otherwise, every employee would qualify and schools would face a form of vicarious liability that Title IX does not allow." *Id.* at 528 (citing *Davis*, 526 U.S. at 640–41; *Gebser*, 524 U.S. at 288). Thus, the Court in *Kesterson* seems to have restricted who may be deemed an "appropriate person" to the extent a school employee does not constitute an appropriate person simply because they are a mandatory reporter. Even so, the question of who is an "appropriate person" is still a fact-dependent question to the extent even the Court in *Kesterson* analyzed whether the individual was "high enough up" in the "chain-of-command"—an inquiry that will necessarily differ depending on the "hierarchies and disciplinary protocols" in place at each school.

That the inquiry remains dependent on the hierarchy and disciplinary protocols in place at each school raises at least two additional questions. First, there is the question of who becomes the "appropriate person" to report an incident of sexual assault for purposes of imputing knowledge to the educational institution when the alleged assailant is at the top of the hierarchy or "chain-of-

19

command." It does not appear that the Sixth Circuit has had an opportunity to squarely address this issue.

Second, there is the question of what information a plaintiff needs to provide in their initial Complaint regarding the individual they assert to have notified and their place in the institutional hierarchy. On the one hand, it could be argued the plaintiff has the burden of adequately pleading each of the elements and sub-elements of their claim, including that the individual they told was an "appropriate person" because of their place in the institutional hierarchy. On the other hand, it seems unlikely a plaintiff would be aware at the time they file their Complaint—or at the time they told a school employee about the sexual assault—what the internal structure, policies, and reporting mechanisms of a school are. This is especially true in the K-12 context where, unlike the university context, the school may not have a Title IX coordinator, Title IX office, or policy that the general public can turn to for information on the school's reporting mechanisms. Arguably, because in many instances only the K-12 school would know about their internal hierarchy and reporting structures, it is sufficient for a plaintiff at the pleading stage to allege they reported the incident or incidents of sexual assault to a school employee that could, at least possibly, have the "authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf."

In this case, Plaintiff states he told either a teacher or librarian about the incident in the library shortly after it happened. Specifically, he states, "I tried to get back to work but then got up to ask both librarians about faculty not being able to be touching, and where Crockett touched me," as well as "I walked up to the counter in the library and told a teacher that a person is [not] supposed to be touching a child like that" [Doc. 1 pp. 2, 3]. The Court finds these statements are sufficient at the pleading stage—particularly since Plaintiff is currently proceeding pro se—to

meet the "appropriate person" standard. While a teacher or librarian is not a position that would automatically constitute an "appropriate person" in the way a Title IX coordinator, principal, or head of a university would be due to the typical placement of these positions in the school hierarchy, they are also not automatically excluded from constituting "appropriate persons" under the current jurisprudence. Rather, it remains a fact-specific inquiry dependent on the particular hierarchy and reporting mechanisms in place at the school.

At this stage in the proceedings, the Court finds it inappropriate to place the onus for knowing the inner workings of the school's hierarchy on Plaintiff. Instead, it is appropriate for Plaintiff to have alleged he told a teacher or librarian. This is particularly true since all facts must be construed in the light most favorable to the plaintiff and it is possible, for example, that the teacher or librarian in question held some position within the school that would give them greater authority to address and rectify any instances of sexual harassment. In addition, the Court remains troubled by the fact that the alleged assailant in this case falls somewhere near the top of the hierarchy or chain-of-command as principal of the school. In fact, Plaintiff notes in his Complaint that at some point, a school employee allegedly talked with Crockett about the incident and "resolved it" [*Id.* at 2]. As Plaintiff points out, the power imbalance at play raises some questions "because how would [the employee] resolve it with the one who [allegedly] touched me inappropriately" [*Id.*]. For all of these reasons, the Court finds Plaintiff's assertion that he told a teacher or librarian to be sufficient. It may become clear later in the proceedings exactly whom he told—assuming he told anyone—and what their place was in the reporting hierarchy. For now, however, it will be assumed that the teacher or librarian was an "appropriate person" with the "authority to address discrimination and institute corrective measures."

21

ii.  The "What" and "When"

Having found that Plaintiff has sufficiently pleaded to whom he reported the incident, the next question is "what" he stated to those with whom he spoke.  Plaintiff states in the Complaint that he "ask[ed] both librarians about faculty not being able to be touching, and where Crockett touched me" [Doc. 1 p.1], and that he "walked up to the counter in the library and told a teacher that a person is [not] supposed to be touching a child like that" [*Id.* at 2].  Whether Plaintiff's first statement is sufficient at the pleading stage to show he informed the school employees of the incident-in-question is a close call.  On the one hand, Plaintiff states he asked, as opposed to told, the employees about the inappropriate touching.  This statement could be construed as Plaintiff asking an open-ended question about sexual harassment, generally.  However, he also goes on to state he asked about "where Crockett touched [him]."  The level of specificity Plaintiff provides at this point, even if it was in the form of a question, should have alerted the school employee that an incident of sexual harassment may have occurred.  Furthermore, even if Plaintiff's first statement would not have, on its own, adequately informed the employee of a potential incident of sexual harassment, Plaintiff then goes on to state in the Complaint that he "*told* a teacher that a person is [not] supposed to be touching a child like that." (emphasis added).  While Plaintiff does not expressly state that he told the teacher he had been touched, even if he had only stated he—or a student, generally—should not be touched in a sexually harassing way, the Court finds that is sufficient to impart notice on the school employee that an incident of sexual assault may have occurred.

Thus, at this stage in the proceedings, Plaintiff's Complaint adequately relates that he provided sufficient information to place an "appropriate person" on notice.  The only remaining question is "when" he did so.  In his Complaint,  Plaintiff states he "tried to get back to work but

22

then got up to ask both librarians about faculty not being able to be touching, and where Crockett touched me" [Doc. 1 p. 1]. This indicates that Plaintiff told the appropriate individuals immediately after the event occurred.

In sum, Plaintiff has sufficiently pleaded whom he told by alleging he told a teacher, librarian, or library staff. This teacher or librarian may have had—without knowing more about the school's hierarchy or reporting structure—the "authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." He has also sufficiently pleaded "what" he told them by, at the very least, inferring a member of the school staff inappropriately touched him. Finally, he pleaded "when" he told them by stating he told them shortly after the incident occurred. Plaintiff has therefore met each part of the second *Wamer* element at the pleading stage.

### c. Clearly Unreasonable

The third element in a teacher-student harassment claim requires the plaintiff to show "the school's response was clearly unreasonable." *Wamer*, 27 F.4th at 471. "It is 'clearly unreasonable,' . . . for a school to make 'no effort whatsoever either to investigate or put an end to [known] harassment.'" *Doe*, 329 F.Supp.3d at 569 (quoting *Davis*, 526 U.S. at 654). In fact, a school making no effort to investigate or put an end to the harassment is the "model example" of "clearly unreasonable conduct." *Id.* at 570.

Plaintiff states, "The library staff should've reported it. It would've stopped it from happening the 2nd time" [Doc. 1 p. 3]. Plaintiff's statement implies the staff did not report the incident. In addition, the remainder of the Complaint is devoid of any other reference to actions,

or inactions, by the school between the time of the first and second incident of harassment.[7] Construing the facts in the light most favorable to Plaintiff, it can therefore be assumed the school took no action between the first and second alleged incidents of sexual harassment to report, investigate, or otherwise put an end to the harassment. In that way, the school's conduct is—at least according to the Complaint as construed in the light most favorable to Plaintiff—the model example of clearly unreasonable conduct.

### d. Causation

The final element a plaintiff must allege for teacher-student sexual harassment is that "the school's deliberate indifference caused [the plaintiff] to suffer discrimination." *Wamer*, 27 F.4th at 471. As the Sixth Circuit held in *Wamer*, the discrimination the plaintiff suffered because of the school's deliberate indifference can either be "an additional instance of harassment" or "an objectively reasonable fear of further harassment [that] caused [the plaintiff] to take specific reasonable actions to avoid harassment [and] which deprived the plaintiff of the educational opportunities available to other students." *Id.*

### i. Deprivation of Educational Opportunities

In *Wamer*, the Court found the plaintiff had sufficiently alleged that she suffered an objectively reasonable fear of harassment following the initial incident of harassment that, in turn, caused her to take specific reasonable actions to avoid further harassment and which deprived her of educational opportunities available to others. *See Wamer*, F.4th at 471–72. Specifically, the Court noted that, "as a result of [the plaintiff's] fear of continued harassment [following the first incident of alleged harassment by her instructor,] she took reasonable steps, including switching

---

[7]    The Complaint details several actions by the school, but these occurred after Plaintiff's father reached out in June—once both incidents of alleged sexual harassment had occurred.

majors and enrolling primarily in online classes, to avoid encouraging her harasser, which undoubtedly detracted from her education experience." *Id.* at 471.

In this case, there is some indication that Plaintiff suffered an objectively reasonable fear of further harassment and that this caused him to take specific reasonable actions to avoid further harassment. Specifically, Plaintiff alleges "[w]hen [he] saw Mr. Crockett [he'd] leave the [area] or try to avoid him" and "[he] was very uncomfortable" [Doc. 1 p. 3]. Plaintiff does not sufficiently allege, however, that these specific reasonable actions deprived him of the educational opportunities available to other students. In *Wamer*, the plaintiff switched majors, enrolled primarily in online classes, and took other steps to avoid her alleged attacker. Here, in contrast, Plaintiff states he would leave the area or try to avoid Crockett. Plaintiff does not indicate how leaving the area directly impacted his educational opportunities. The Court further notes that the alleged incidents of harassment took place in May of Plaintiff's senior year and that Plaintiff has since graduated. While the alleged incident of harassment may have taken an emotional toll on Plaintiff,[8] created an objectively reasonable fear of further harassment, and caused him to take steps to avoid further harassment, his allegations do not demonstrate that those steps rose to the level of depriving him of educational opportunities available to others.

ii.    Second Incident of Sexual Harassment

While Plaintiff has failed to allege he was deprived of educational opportunities available to others because of his fear of further harassment, he has sufficiently alleged a second incident of

---

[8]    Plaintiff states the alleged sexual harassment "[took] a toll on [him] emotionally," caused him to be "embarrassed, ashamed and confused," made it so he "will always feel weird because no man will or has ever touched me like that," and otherwise made him "very uncomfortable" [Doc. 1 pp. 2–3].

25

sexual harassment that occurred after the school had actual notice and acted "clearly unreasonable." In particular, Plaintiff states in his Complaint:

> The last time was when school set out while walking in front of the gym while everyone was going home to buses, I waved some friends by and turned around to find Crockett walking towards me talking to me congratulating me while waving at students who wave. He walks up close to me and puts both hands on my pecs talking about how he's proud and I got it done. He then giggles walking away waving, saying good luck.

[Doc. 1 p. 1]. On the one hand, a reasonable fact finder could conclude Crockett's conduct was innocuous conduct that does not constitute sexual harassment. However, viewing the facts in the light most favorable to Plaintiff and drawing all reasonable inferences in his favor, a reasonable fact finder could determine this conduct constitutes sexual harassment.

As stated above, the Sixth Circuit has "conservatively describe[d] 'harassment,' . . . as some type of aggressive and antagonistic behavior that, from the victim's perspective, is uninvited, unwanted, and non-consensual." *Kollaritsch*, 944 F.3d at 620. Even viewing the alleged incident in isolation, a reasonable fact finder could conclude that a school administrator walking up close to a student and putting both hands on the student's "pecs" while talking with them constitutes aggressive and antagonistic behavior that is unwanted. Furthermore, this was not an isolated incident according to the Complaint. Plaintiff alleges that the same administrator had already grabbed him in the same spot—his chest or "pecs"—earlier that month, causing Plaintiff to push the administrator's hands away. Especially when viewed in conjunction with this first incident, a reasonable fact finder could view this second incident as aggressive, antagonistic, uninvited, unwanted, and non-consensual behavior.

As for whether such conduct is "on the basis of [Plaintiff's] sex," the same reasoning as to why the first incident of alleged harassment was "sexual" also applies here. Namely, Plaintiff alleges Crockett performed this act "to take advantage of [Plaintiff]," and "to 'flirt' or 'groom'"

26

him [Doc 1 p. 3]. In making these statements, Plaintiff clearly implies that Crockett's motive in performing these acts is sexual desire—a motive that "indisputably" is based on the victim's gender. *See Doe*, 329 F.Supp.3d at 560. Thus, Plaintiff has sufficiently alleged both that he was harassed, and that the harassment was "on the basis of [his] sex," meaning he has met the fourth *Wamer* element at the pleading stage.

The remaining question is which Defendants Plaintiff's Title IX claim can proceed against. Each of the defendants that Plaintiff named in his Title VI claim also appear to be named in his Title IX claim, including KCS, Knox County School Board, Knox County Schools Security Department, Knox County Schools Human Resources Department, Gary Duper, Jason Periard, Paul Pinkston, Becky Weurich, the Knox County Sheriff's Office, and the Knoxville Police Department [Doc. 1 p. 1].

As already discussed in relation to Plaintiff's Title VI claims, KCS, Knox County School Board, Knox County Schools Security Department, and Knox County Schools Human Resources Department are not separate entities that are each subject to suit but, rather, are all part of the same entity. Thus, the undersigned recommends that the Chief District Judge dismiss the Title IX claims against all school-related entities other than KCS.

As for the individually named Defendants—like Title VI—Title IX only applies to entities and not individuals. *See Fitzgerald v. Barnstable Sch. Comm.* 555 U.S. 246, 247 (2009) ("[Title IX] has consistently been interpreted as not authorizing suit against school officials, teachers, and other individuals."); *Soper v. Hoben*, 195 F.3d 845, 854 (6th Cir. 1999) ("[T]he district court correctly dismissed the Sopers' Title IX claim against defendants in their individual capacities."). Thus, to the extent Plaintiff names Gary Duper, Jason Periard, Paul Pinkston, and Becky Weurich in their individual capacities as violating Title IX, these claims must be dismissed. Further, to the

extent Plaintiff names these individuals in their official capacity, they are once again duplicative of the claims against KCS. *See Doe v. Lake Erie Coll.*, No. 1:19CV02619-JRA, 2021 WL 288559, at *4 (N.D. Ohio Jan. 27, 2021) ("Moreover, to the extent the claim purports to be against these individuals in their official capacities, it is duplicative of the claim against Lake Erie College, and must be dismissed.").

Finally, as to the Knox County Sheriff's Office and Knoxville Police Department, as noted above in the Title VI analysis, Plaintiff has not pleaded that these local law enforcement agencies receive federal financial assistance. Thus, the Court recommends that the Title IX claims against these local law enforcement agencies also be dismissed.[9]

This leaves only KCS. In his Complaint, Plaintiff states, "Knox County schools receives Title IX funding" [Doc. 1 p. 1]. In addition, the teacher or librarian that Plaintiff informed about the first alleged incident of sexual harassment appears to have been an individual associated with KCS. Thus, the undersigned recommends that the Chief District Judge find that KCS is a properly named Defendant for purposes of Plaintiff's Title IX claim.

Accordingly, the undersigned finds Plaintiff has sufficiently pleaded a claim of relief under Title IX against Knox County Schools, but that Plaintiff's allegations are insufficient to state a claim of relief under Title IX as to all remaining Defendants. As a final matter, the undersigned has considered whether to grant Plaintiff an opportunity to amend but declines to do so because any such amendment would be futile for the reasons stated above.

---

[9] To the extent the Chief District Judge finds Plaintiff has sufficiently pleaded that these law enforcement agencies receive federal financial assistance, the undersigned further recommends that the Chief District Judge nevertheless dismiss the Title IX claims against these Defendants because Plaintiff does not state in his Complaint that either of these agencies received "actual notice" of the alleged sexual harassment until after the second incident of harassment occurred.

## III. CONCLUSION

For the reasons set forth above, the Court **GRANTS** Plaintiff's Applications to Proceed In Forma Pauperis [**Docs. 2 & 7**]. The Court **DIRECTS** the Clerk to file the Complaint in this case without prepayment of costs or fees. However, no process shall issue until the Chief District Judge has ruled on this Report and Recommendation,[10] because the undersigned **RECOMMENDS**[11] that the Chief District Judge: (1) **DISMISS** Plaintiff's Title VI as to all Defendants, (2) allow Plaintiff's Title IX claim to proceed against Knox County Schools, and (3) **DISMISS** Plaintiff's Title IX claim as to all remaining Defendants.

Respectfully submitted,

Debra C. Poplin
United States Magistrate Judge

---

[10]    This matter is to be presented to the District Judge pursuant to this Report and Recommendation under the authority of *Gibson v. R.G. Smith Co.*, 915 F.2d 260, 263 (6th Cir. 1990), wherein the Court of Appeals states that such matters proceed automatically to a district judge for examination of the complaint after a magistrate judge has granted the petition to proceed without prepayment of costs.

[11]    Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Fed. R. Civ. P. 72(b)(2). Such objections must conform to the requirements of Federal Rule of Civil Procedure 72(b). Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 153–54 (1985). "[T]he district court need not provide *de novo* review where objections [to the Report and Recommendation] are '[f]rivolous, conclusive or general.'" *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986) (quoting *Nettles v. Wainwright*, 677 F.2d 404, 410 n.8 (5th Cir. 1982)). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed. of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).